UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY SCHRAM,<br>    Plaintiff,<br><br>v.<br><br>PMC INSURANCE AGENCY, INC., a Massachusetts Corporation, DAVID M. MALLOY, individually, and ANDREW SHAW, individually,<br>    Defendants, | Civil Action No. |

# COMPLAINT AND REQUEST FOR TRIAL BY JURY

## PREFATORY ALLEGATIONS

1. Plaintiff Jeffrey Schram ("Dr. Schram") is an individual residing in Brentwood, California.

2. Defendant PMC Insurance Agency, Inc. ("PMC Insurance Agency") is a Massachusetts corporation with its principal place of business located at 209 Burlington Road, Suite 109, Bedford, Massachusetts 01730.

3. Defendant David M. Malloy ("Mr. Malloy") is an individual residing in the Commonwealth of Massachusetts.

4. Defendant Andrew Shaw ("Mr. Shaw") is an individual residing in the Commonwealth of Massachusetts.

5. PMC Insurance Agency, Mr. Malloy, and Mr. Shaw are collectively referred to hereinafter as "Defendants".

6. PMC Insurance Agency, Mr. Malloy, and Mr. Shaw aided and assisted one another to perpetuate the wrongdoings asserted herein, and thus they are liable to their wrongdoings asserted herein.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. Section 1332 and diversity of citizenship as the amount in controversy exceeds the sum or value specified in this Federal statute.

8. Venue is proper in this District of Massachusetts pursuant to 28 U.S.C. Section 1391(b)(1) and (2), since the defendants are residents of this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District of Massachusetts.

## BACKGROUND

9. On or about September 28, 2010, Dr. Schram, PMC Insurance Agency, Mr. Malloy, Mr. Shaw and Gregory Malloy formed a Massachusetts limited liability company known as PMC PAYGO LLC ("PMC PAYGO" and/or the "LLC").

10. The managers of the LLC are Gregory Malloy, Mr. Shaw, Mr. Malloy and Dr. Schram.

11. On July 22, 2010, the parties entered into an operating agreement whereby the members of the LLC were PMC Insurance Agency and Dr. Schram.

12. PMC Insurance Agency at all relevant times held fifty-one (51%) percent of the membership interests in the LLC and Dr. Schram at all relevant times held the remaining forty-nine (49%) percent of the membership interests in the LLC.

13. PMC Insurance Agency is in the business of selling insurance as a wholesaler to agents, particularly in complex insurance markets involving workers' compensation and staffing companies.

14. Leading up to September of 2010, in order to expand and solidify its foothold in these lucrative insurance markets, PMC Insurance Agency was looking to acquire a PayGo system to enhance its existing stable of insurance products.

15. A PayGo system tracks a company's workforce through its payroll, which in turn enables both the insured and the carrier to manage premium payments in order to avoid end of policy term audits and the surprises associated with such audits.

16. PayGo is a service offered to the insured, and it is the insured whom decides whether or not to purchase the service.

17. Dr. Schram is in the business of creating software solutions.  Dr. Schram's past experience entails:

    - President of TendToBusiness, LLC
        - Develop a PayGo system for carriers and MGAs

    - President of E-Probate, LLC
        - Developed a system that ran 15 Surrogate courts in New Jersey
        - Developed web system to permit lawyers to remotely submit probate cases.

    - President of Facstore, Inc.

- Develop a police department system that was used in 23 cities and towns in New Jersey;
- Consultant to Lucent Technologies;
- Developed a program that helped to create a NDA for a pharmaceutical company;
- Developed a program that permitted the Computer Gaming board to rate each game;
- Developed a system that ran the financial aspects of a municipality;
- Developed a system for real property revaluation, which has been used in more than 200 municipalities in New Jersey and New York;
- Designed, wrote and implemented the first computer system to successfully test the 300,000 New York city high school students;

  o Tenured Associate Professor of Mechanical Engineering at New Jersey Institute of Technology.

18. From 2006 to 2009 Dr. Schram developed a PayGo software solution that he was marketing to AIG. The person that Dr. Schram interacted with at AIG was Mr. Shaw.

19. In 2009 Mr. Shaw asked to meet with Dr. Schram and told him that he was joining PMC Insurance Agency and he asked if Dr. Schram was interested in running a pilot operation using his software at PMC Insurance Agency. Dr Schram agreed.

20. By all accounts the PayGo pilot project developed and headed up by Dr. Schram was a resounding success.

21. As a result of this success, PMC Insurance Agency, and its principals, Mr. Malloy, Gregory Malloy and Mr. Shaw partnered with Dr. Schram to acquire control of Dr. Schram's PayGo product. PMC Insurance Agency desired to use Dr. Schram's PayGo product as an adjunct service to its core insurance offerings to expand its footprint within various insurance markets.

22. This partnership was solidified and memorialized by the formation of PMC PAYGO and the entering of the PMC PAYGO operating agreement.

23. As memorialized in the operating agreement, Dr. Schram would contribute his highly valuable PayGo software solution as developed by his then company TendtoBusiness, Inc., provide technical support, be responsible for the weekly processing and oversee the maintenance of the software.

24. PMC PAYGO and ultimately PMC Insurance Agency, in turn, received the exclusive right to use Dr. Schram's software by way of the parties' partnership with Dr. Schram in PMC PAYGO.

25. As part of this partnership and in lieu of paying for their fifty-one (51%) percent of the software, PMC Insurance Agency agreed to PMC PAYGO's expenses.

26. PMC PAYGO two revenue streams are:

    - Seven-tenths (0.7%) percent of the policy premium for any policy processed by PMC PAYGO paid by PMC Insurance Agency; and

    - A fee of approximately Twenty ($20) Dollars per month per policy paid by the insured.

27. Since PMC PAYGO reduces the "audit surprise", PMC Insurance Agency was able to increase its sales and capture a significant portion of the staffing company workers compensation market place. This has become a lucrative class of business. For instance, in 2018, the policies processed by PMC PAYGO produced approximately Two Million, Five Hundred Thousand ($2,500,000) Dollars in commissions for PMC Insurance Agency. Their expenses were One Hundred Seventy Thousand ($170,000) Dollars. PMC PAYGO produced One Hundred Twenty Thousand ($120,000) Dollars in fees and approximately Two Hundred Fifty Thousand ($250,000) Dollars in commissions.

28. Critical to the success of the partnership was that PMC Insurance Agency was to market and sell PMC PAYGO's software to its client base.

29. PMC Insurance Agency was also to expand its reach into payroll companies, for which Dr. Schram enhanced the PMC PAYGO software to serve.

30. Section 6.7.1 of the LLC's operating agreement is clear that PMC Insurance Agency was not to affiliate itself with or provide the use of any other PayGo product other than the PMC PAYGO software solution without the participation of PMC PAYGO:

    Commencing upon the date of the execution of this Agreement and until PMC PayGo, LLC no longer operated the businesses compromising the Subject Assets acquired from TendtoBusiness, Inc., PMC shall not directly or indirectly, or as a partner, shareholder, employee, manager or otherwise, own, manage, operate, control, be employed by, participate in, or otherwise be connected with any other insurance PayGo activity without participation of PMC PayGo, LLC.

31. The operating agreement further guaranteed Dr. Schram a salary of Sixty Thousand ($60,000) Dollars for managing the PMC PAYGO business.

32. A fee of seven-tenths (0.7%) percent of the commissions on the premiums of the policies placed by PMC Insurance Agency using PMC PAYGO was to be paid to PMC PAYGO.

33. Section 6.3 of the operating agreement reiterates and reaffirms PMC Insurance Agency's binding obligation not to compete with the PMC PAYGO and its software solution, which includes offering other PayGo systems to its customers.

34. In the Spring of 2017, Defendants had discussions with Dr. Schram regarding Dr. Schram's retirement and a succession plan. Dr. Schram said he would rewrite the PayGo software, move

it to the Microsoft Cloud, and automate the process thus eliminating the need for a technical person to produce the weekly reports. This update would allow others to operate the system absent Dr. Schram's involvement.

35. The parties further agreed that upon Dr. Schram providing new software, he would step away from the day to day operations of the LLC and continue receiving his distribution from PMC PAYGO's revenues, revenues that were increasing at a rate of fifteen (15%) percent per year.

36. Dr. Schram memorialized the May 17th discussions in writing and confirmed the understandings and agreements arising during these discussions ("Succession Agreement"). Defendants never disavowed or disagreed with the content of the Succession Agreement.

37. In the Fall of 2019, Dr. Schram completed automating the solution and PMC PAYGO took possession and control of the automated solution. At this point the entire back office system was running on the Microsoft Cloud, able to be used by a non-technical person. All in accordance with the Succession Agreement.

38. A few weeks or so after delivering the automated PayGo system, Mr. Malloy and Mr. Shaw engaged Dr. Schram in two telephone conversations, which occurred on November 21 and 22 of 2019.

39. During the November 22nd telephone conference involving Dr. Schram, Mr. Shaw and Mr. Malloy, Mr. Shaw stated that they were diverting PayGo business to AmTrust and intended to unilaterally shutdown PMC PAYGO.

40. On November 24, 2019, Dr. Schram sent Mr. Shaw and Mr. Malloy an e-mail confirming the parties' telephone discussions. In pertinent part, Dr. Schram confirmed:

- I was shocked during the telephone calls on Nov. 21, 2019 and Nov. 22, 2019 with David Malloy and Andy Shaw when I first heard that PMC Insurance sales force has been participating in offering AmTrust PayGo contracts rather than offering PMC PayGo contracts.
- This action is in opposition to our operating agreement, see below.
- Andy then had the nerve to tell me that because PMC PayGo is not growing, he is trying to decide if its ROI is high to permit PMC PayGo to continue.
- PMC is not growing because PMC Insurance, without my knowledge, is participating in offering PayGo contracts to other PayGo providers.
- This is especially troubling because several years ago I informed you that I was contacted by other MGAs to use the PMC PayGo platform. PMC Insurance refused to allow it and said that PMC PayGo was exclusive to PMC Insurance.
- However, in regards to using AmTrust's PayO, you never informed me that PMC insurance was participating in selling another PayGo system in violation of our agreement.
- Why would you do this?
- It is now clear that instead of working to make PMC PayGo successful, you were trying to starve it.

- This was done so you could claim that its ROI is not sufficient to keep it alive, just when it was time for me to retire and continue to share in PMC PayGo profits. You wanted to close PMC PayGo to avoid paying me my share of its profits.
- Despite your efforts, PMC PayGo is still profitable and that is why you are using the insufficient ROI to kill it.
- It should be noted that 2020 ROI is going to be greatly increased due to the $100,000 cost reduction.
- Two years ago, PMC PayGo developed a payroll interface. As part of your scheme to starve PMC PayGo, you did not want to expand our PMC PayGo business. That is why you have not returned my phone call for or met with Checkwriters, a payroll company, who has been successfully sending electronic files to us and waited to expand our payroll company relationship. For over a year I have not heard back from Bob Barton, who was supposed to produce marketing materials for our new payroll company interface.

41. Defendants never disputed Dr. Schram's written confirmation of the November 21st and 22nd conversations.

42. The use of competitive systems was in direct violation of sections 6.7.1, 6.2.2 and 6.3 of the parties' operating agreement.

43. From 2010 to 2018 PMC PAYGO had a growth rate of fifteen (15%) percent per year. This growth was despite the fact that PMC Insurance Agency was not promoting or marketing PMC PAYGO to payroll companies, which had and continued to express a strong interest in using the software solution.

44. As a result of Defendants diversion of PayGo opportunities, the revenues of PMC PAYGO dramatically dropped. As of January, 2020, per records provided by Defendants, revenues had dropped by twenty-five (25%) percent compared to last year.

45. It is apparent that Defendants have reached the conclusion that they no longer wish to share the current or future revenues of PMC PAYGO with Dr. Schram and they desire to push Dr. Schram out of the LLC, denying Dr. Schram the fruits of his labor, by driving PMC PAYGO into the ground.

46. On December 23, 2020 counsel for Dr. Schram sent a letter on Dr. Schram's behalf requesting an accounting of the diverted PayGo opportunities. No accounting had been offered or forthcoming.

## CAUSES OF ACTION

### COUNT ONE
### Breach of Fiduciary Duty
### (Against All Defendants)

47. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

48. Defendants owe Dr. Schram a fiduciary duty as a result of their positions as members and managers of PMC PAYGO.

49. Defendants and Dr. Schram were and are members in PMC PAYGO.

50. Dr. Schram holds a minority membership interest in PMC PAYGO.

51. PMC Insurance Agency owns a fifty-one (51%) percent interest in PMC PAYGO.

52. Gregory Malloy, Mr. Malloy and Mr. Shaw are managers of PMC Insurance Agency.

53. Defendants wrongfully diverted PayGo business applicants to other entities such as AmTrust.

54. Defendants wrongfully interfered with the efforts of the salespersons of PMC Insurance Agency to sell and market PMC PAYGO products.

55. Defendants wrongfully convinced Dr. Schram to create and write new software for PMC PAYGO so that it would be fully automated for the next fifteen (15) years with the intent and purpose of pushing Dr. Schram out of the PMC PAYGO.

56. Defendants had a duty to act with the utmost good faith and loyalty towards Dr. Schram and failed to do so.

57. Defendants breached their fiduciary duties by:

    a. Selling the PayGo product of other companies in lieu of the PMC PAYGO product.

    b. Discouraging and blocking PMC Insurance Agency salespersons from selling PMC PAYGO products.

    c. Misrepresenting to Dr. Schram that if he automated the PMC PAYGO system, the PayGo product would be sold and marketed by PMC Insurance Agency and he would continue to receive a distribution from the sales for the remainder of his life as part of the Succession Plan.

    d. Artificially and deceptively reducing the revenues of PMC PAYGO to deny Dr. Schram his distributions and to try to force a closure of PMC PAYGO.

    e.    Taking action and seeking to force a closure of PMC PAYGO so they would not have to pay Dr. Schram his share of the distributions.

    f.    Defendants have failed to pursue the sale of PMC PAYGO products to payroll companies in an effort to reduce revenues for the purposes of driving Dr. Schram out of PMC PAYGO and dissolve the company in order to take sole control of the PayGo product.

58. Each defendant knowingly participated in and/or knowingly aided and abetted in the breach of the fiduciary duty by the other defendant.

59. As a result of Defendants' actions, plaintiff has been damaged in an amount to be determined at trial.

## COUNT TWO
### Breach of Operating Agreement
### (Against PMC Insurance Agency)

60. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

61. Defendant breached Sections 6.3 and 6.7.1, as well as other provisions of the operating agreement.

62. Section 6.7.1 of the operating agreement is clear that PMC Insurance Agency was not to affiliate itself with or provide the use of any other PayGo product other than the PMC PAYGO software solution:

> Commencing upon the date of the execution of this Agreement and until PMC PayGo, LLC no longer operated the businesses compromising the Subject Assets acquired from TendtoBusiness, Inc., PMC shall not directly or indirectly, or as a partner, shareholder, employee, manager or otherwise, own, manager, operate, control, be employed by, participate in, or otherwise be connected with any other insurance PayGo activity without participation of PMC PayGo, LLC.

63. In a blatant disregard of the terms of the operating agreement, Defendants have been selling and marketing PayGo products of other entities.

64. In a blatant disregard of the provisions of the operating agreement, Defendants have been failing and refusing to sell or market the PMC PAYGO product.

65. Section 11.7 of the operating agreement provides that Dr. Schram can recover his attorneys' fees upon bringing and prevailing an action to enforce the agreement.

66. With regards to their wrongful actions, each of the Defendants was aiding and abetting the other and is thus liable for the wrongdoings alleged herein.

67. As a result of Defendant's actions, plaintiff has been damaged in an amount to be determined at trial.

## COUNT THREE
### Violation of the Covenant of Good Faith and Fair Dealing
### (Against PMC Insurance Agency)

68. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

69. The purpose of the operating agreement was for PMC Insurance Agency to exclusively promote and sell the PMC PAYGO product to generate distributions for the members of PMC PAYGO.

70. PMC Insurance Agency defeated the purpose of the parties' agreement by offering and promoting PayGo products offered by other entities other than PMC PAYGO.

71. PMC Insurance Agency prevented Dr. Schram from receiving and enjoying the fruits of the parties' agreement by failing and refusing to offer the PMC PAYGO product to its customers as contemplated by the parties' agreement.

72. Dr. Schram will prove his damages at the time of trial.

## COUNT FOUR
### Fraud
### (Against All Defendants)

73. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

74. The various misstatements and omissions of Defendants, as described more fully above, constitute intentional misrepresentations and fraud.

75. Defendants intended Dr. Schram to rely on those misleading omissions and misstatements.

76. Dr. Schram reasonably relied on the misstatements and omissions of Defendants to his detriment.

77. As a result of Defendants' actions, plaintiff has been damaged in an amount to be determined at trial.

## COUNT FIVE
### Negligent Misrepresentation
### (Against All Defendants)

78. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

79. The various misstatements and omissions of Defendants, as described more fully above, constitute intentional and/or negligent misrepresentations.

80. Dr. Schram reasonably relied on the misstatements and omissions of Defendants to his detriment.

81. As a result of Defendants' actions, plaintiff has been damaged in an amount to be determined at trial.

## COUNT SIX
### Constructive Trust
### (Against PMC Insurance Agency)

82. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

83. Defendant seeks to obtain Dr. Schram's interests by means of the breach of its fiduciary duties and by the other wrongful conduct alleged above.

84. Defendant seeks to bar Dr. Schram from receiving distributions from his equity interest by selling PayGo products of entities other than PMC PAYGO.

85. Defendant has wrongfully sought to bar Dr. Schram from receiving distributions from PMC PAYGO by refusing to sell or market the PayGo software.

86. Dr. Schram is entitled to a constructive trust over his purported share of PayGo sales wrongfully diverted to other entities.

## COUNT SEVEN
### Injunctive Relief
### (Against All Defendants)

87. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

88. Defendants have engaged in conduct to wrongfully divert and misappropriate the LLC's business opportunities.

89. Defendants have failed and refused to cease engaging in the wrongful diversion and misappropriation of the LLC business opportunities.

90. Dr. Schram seeks injunctive relief preventing the further wrongful diversion and misappropriation of the LLC business opportunities.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

a. Judgment against Defendants;

b. Damages, including compensatory, liquidated, and trebled damages to Plaintiff, as authorized and mandated by applicable law, in an amount to be proven at trial;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs;

e. Appropriate injunctive, declaratory and other equitable relief; and

f. Grant such other and further relief as this Court deems just and proper against defendants and reach and apply defendants.

## REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests that this action to be tried by jury.

**DATED: February 14, 2020**             **PLAINTIFFS,**
                                          By their attorney,


                                          /s/ Timothy K. Cutler
                                          Timothy K. Cutler (BBO#636124)
                                          CUTLER & WILENSKY LLP
                                          460 Totten Pond Road, Suite 410
                                          Waltham, Massachusetts 02451
                                          (617) 232-7500 Telephone
                                          (617) 232-7560 Facsimile
                                          tim@cutlerlegal.com